IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

FRANK D. MAKI,

                    Plaintiff,                    Civil Action No.
                                                  3:13-CV-1118 (GTS/DEP)

          v.

STATE OF NEW YORK, *et al.,*

                    Defendants,

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

FRANK D. MAKI, *Pro Se*
4789 Route 23
Walton, NY  13856

FOR DEFENDANTS:

[NONE]

REPORT, RECOMMENDATION, AND ORDER

     In 2010, *pro se* plaintiff Frank D. Maki commenced an action in New

York State Supreme Court against a healthcare facility and two

physicians, complaining of inadequate medical treatment received from

them.  Summary judgment was ultimately entered in that case in the

defendants' favor. That determination was affirmed on appeal to the New York State Supreme Court Appellate Division, Third Judicial Department, and leave to appeal to the New York Court Appeals was denied.

Dissatisfied with the result in that action, plaintiff has commenced this suit against the same defendants, all of the judicial officers and a court clerk involved in the state court action, the attorney who represented the defendants in that suit, the State of New York, and the New York State Department of Health. As relief, plaintiff seeks to have the state court determination vacated, and the matter litigated anew in this court.

Plaintiff's complaint and accompanying motion for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for consideration. Based upon my review, plaintiff's IFP application is granted but, for the reasons set forth below, I recommend that his complaint be dismissed without leave to replead.

I.     BACKGROUND

Plaintiff commenced this action on September 10, 2013. Dkt. No. 1. Plaintiff's complaint, the body of which is eighty-nine pages in length and comprised of 412 separately numbered  paragraphs, with nineteen pages of exhibits attached, is accompanied by an application for leave to proceed IFP. In the complaint, plaintiff names the following fourteen defendants:

2

(1) the State of New York; (2) the New York State Department of Health;

(3) Chief Justice Jonathan Lippman of the New York State Court of

Appeals; (4) Justice Karen Peters of the New York State Supreme Court,

Appellate Division, for the Third Judicial Department ("Third Department");

(5) Justice Edward Spain of the Third Department; (6) Justice Elizabeth

Garry of the Third Department; (7) Justice William McCarthy of the Third

Department; (8) Justice John Egan, Jr., of the Third Department;[1] (9)

Justice Eugene Peckham of the New York State Supreme Court; (10)

Deborah Goodrich, the Clerk of the Delaware County Clerk's Office for the

New York State Supreme Court; (11) Shawn Nash, Esq.; (12) Bassett

Healthcare; (13) Dr. Shannon Conrad, and (14) Dr. James Leonardo.  Dkt.

No. 1 at 2-3.

Plaintiff's complaint alleges that in May 2010, he commenced an

action against defendants Bassett Healthcare, Conrad, and Leonardo

complaining of the care and treatment he received beginning in December

2008, when he relocated to the area from Knoxville, Tennessee, and

extending into 2009.  Dkt. No. 1 at ¶¶ 9-20.  On September 29, 2010,

defendant Peckham issued a decision granting the defendants' motion for

---

[1]     Defendant Egan is mistakenly named in plaintiff's complaint as "Eagan."  The clerk is respectfully directed to adjust court records to reflect the proper spelling of that defendant's name.

summary judgment.  *Id.* at ¶ 22; Dkt. No. 1, Exh. D.  That determination

was unanimously affirmed on appeal to the Third Department by a panel

of justices that included defendants Peters, Spain, McCarthy, Garry, and

Egan.  Dkt. No. 1 at ¶ 24; Dkt. No. 1, Exh. E.  Leave to appeal was

subsequently denied by the defendant Lippman in his capacity as Chief

Justice of the New York State Court of Appeals.  Dkt. No. 1 at ¶ 36.

In addition to commencing suit, plaintiff lodged a written complaint

concerning the medical care received at Bassett Healthcare with the New

York Office of Professional Medical Conduct ("OPMC") on October 6,

2009.  Dkt. No. 1 at ¶ 64.  Plaintiff subsequently received a letter from that

agency, dated on or about March 1, 2010, advising that it had found

insufficient evidence to bring a charge of professional misconduct.  *Id.* at ¶

65.  The letter also advised that the investigation was completed and the

file regarding the matter would not be publically available.  *Id.* at ¶ 66.

In his complaint, plaintiff alleges that the defendants wrongfully

discriminated against him, and "[t]he defendants have contempt for [his]

ancestry and status as a white, blue collar, independent worker."  Dkt. No.

1 at ¶ 5.  Plaintiff's summarizes his claims as follows:

> The defendants believe that change to universal
> health care is inevitable due to the socio-political
> environment, and pricing of goods and services in

4

the economy, and have scorn for those who oppose the change. Their ultimate plan is to force everyone to serve a universal healthcare plan. Healthcare rationing would greatly reduce the workload of physicians in the U.S. court systems. So, the defendants conspired to illegally experiment with implementation of healthcare rationing ahead of passage of a hoped for a national healthcare program by the U.S. Congress. They believe premature implementation will them the evidence that can be used to persuade political opponents that healthcare rationing would be good policy and that it will give them actual experience that can be used after passage of healthcare legislation to obtain jobs in the newly created administrative areas. They believe the new healthcare legislation will include a new privilege for physicians which will allow physicians to ration healthcare benefits based on criteria other than health needs. In order to test their belief, the defendants needed to make an experiment.

*Id.*

Plaintiff claims that, through their actions, defendants have violated Art. 1 § 10, Art. 6 § 2, and the Thirteenth and Fourteenth Amendments of the United States Constitution; 42 U.S.C. §§ 1981, 1982, 1983, 1985; Art. 1 §§ 6, 7, 11 of the New York State Constitution; and the New York State Human Rights Law. In addition, plaintiff has asserted common law negligence, fraud, and breach of contract claims. Plaintiff's complaint seeks the following relief:

5

a) The decisions made by the State of New York courts should be declared voided or reversed and expunged from the record;

b) The underlying law suit should be removed to the Federal Court for continuation – I can not get a fair hearing or trial in a New York State court and none of the justices who have feigned to hear the case should be allowed to preside over it for any reason;

c) The defendants should reimburse me for the expenses I incurred when making the appeals for which I received absolutely no consideration – the filing fees, motions fees, cost of the duplicate record and cost of attorney representation at the Court of Appeals;

d) The defendants should be found liable for interest on the final settlement amount of the underlying case for the time during which their actions obstructed justice – approximately two years – at the statutory rate of interest.

e) And any other relief that the court finds just and equitable under the circumstances.

Dkt. No. 1 at 88-89.

II.    DISCUSSION

A.    Application for Leave to Proceed IFP

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee.

6

28 U.S.C. § 1915(a)(1).[2]   In this instance, because I conclude that plaintiff

meets the requirements for IFP status, his application for leave to proceed

IFP is granted. [3]

      B.    Review of Plaintiff's Complaint

          1.    Standard of Review

Because I have found that plaintiff Maki meets the financial criteria

for commencing this case IFP, I must next consider the sufficiency of the

claims set forth in his complaint in light of 28 U.S.C. § 1915(e).  Section

1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall

dismiss the case at any time if the court determines that . . . the action . . .

(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief."  28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court

---

[2]      The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]      Plaintiff is reminded that, although his IFP application has been granted, he will nonetheless be required to pay fees that he incurs in this action, including copying and/or witness fees.

must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See*, *e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that

8

a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most

9

favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

2.    Analysis

Some of plaintiff's claims asserted in his complaint lack palpable merit, while others invoke several well-established principles that preclude his pursuit of this action.

a.    *Rooker-Feldman*

Plaintiff's complaint in this action squarely implicates the *Rooker-Feldman* doctrine, which relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or *sua sponte* by the court." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted) *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). "[It] merely

recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The Supreme Court cautioned, however, that actions "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached" are not precluded by the doctrine because "state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (quotation marks omitted). In short, *Exxon Mobil* effectively laid to rest the suggestion raised by many courts – including the Second Circuit – that the *Rooker-Feldman* doctrine and state court preclusion law are co-extensive, explicitly noting that the doctrine "does not otherwise override or supplant preclusion doctrine[.]"[4] *Id.* at 284.

---

[4]    Although prior formulations of the *Rooker-Feldman* doctrine seemingly invalidated federal causes of action that were "inextricably intertwined" with prior state court determinations, little guidance was available to lower courts as to the meaning of

In the Second Circuit, there are four requirements for the application of *Rooker-Feldman*: (1) the federal-court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state-court judgment, (3) the plaintiff must invite district court to review that judgment, and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *McKithen v. Brown*, 491 F.3d 89, 97 (2d Cir. 2007). "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.'" *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quotation marks omitted).

In this case, it is clear that plaintiff's claims are precluded by the *Rooker-Feldman* doctrine. Indeed, plaintiff commenced a medical

---

that phrase. *Moccio*, 95 F.3d at 198-99 (quoting *Feldman*, 460 U.S. at 482-84 n.16). While the Supreme Court in *Exxon Mobil Corp.* acknowledged its prior use of that phrase, the continued vitality of that formulation post-*Exxon Mobil Corp.* is uncertain. *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 377 F. Supp. 2d 429, 434-35 (S.D.N.Y. 2005).

negligence suit against defendants Bassett Healthcare, Conrad, and Leonardo, which was dismissed by defendant Peckham on September 29, 2010. Dkt. No. 1, Exh. D. That dismissal was affirmed by the Third Department, and the New York State Court of Appeals denied plaintiff leave to appeal. Dkt. No. 1, Exh E; Dkt. No. 1 at ¶ 259. In addition, plaintiff has explicitly requested this court to overturn the state court's decisions dismissing his action on grounds directly related to the reasons cited by defendant Peckham in his decision granting summary judgment. Indeed, throughout plaintiff's complaint, he alleges that the Third Department and Court of Appeals incorrectly construed his complaint to assert a medical malpractice claim and that they improperly credited certain record evidence. *See, e.g.,* Dkt. No. 1 at ¶¶ 85, 105, 116, 126-28, 189-92, 211-12, 223. Without question, then, plaintiff has asked this court to review the merits of the state court's decisions, which the *Rooker-Feldman* doctrine prohibits. *See, e.g., Navin v. HSBC Bank USA, Nat'l Ass'n*, No. 12-CV-0752, 2013 WL 3965123, *2 (D. Conn. Aug. 2, 2013) ("This court is barred from considering the merits of [the plaintiff]'s cause of action . . . by the *Rooker-Feldman* doctrine."). Accordingly, I recommend the court dismiss all claims asserted against any of the defendants that seeks relief in the form of an order vacating a New York

13

State court's decision.

### b. Judicial Immunity

Seven of the defendants named in plaintiff's complaint are judicial officers and are sued based upon actions taken in their judicial capacities. Specifically, plaintiff alleges that defendant Peckham improperly dismissed his state-court case against defendants Bassett Healthcare, Conrad, and Leonardo. *See, e.g.,* Dkt. No. 1 at ¶ 281. Defendants Peters, Williams, Spain, McCarthy, and Garry, all of whom are justices sitting on the New York State Appellate Division for the Third Department, are sued based on an allegation that that they improperly affirmed defendant Peckham's decision dismissing his case on summary judgment. *Id.* at ¶ 283. Similarly, defendant Lippman is sued based on an allegation that he wrongfully denied plaintiff's request for leave to appeal the Third Department's decision. *Id.* at ¶ 284.

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young*, 41 F.3d

14

at 51.  It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity."  *DuQuin*, 320 F. Supp. 2d at 41. Applying this well-established principle to this case, it is clear that plaintiff's claims against defendants Peckham, Peters, Spain, Garry, Williams, McCarthy, and Lippman arise from conduct performed in their official judicial capacity.  For that reason, I recommend that all of the claims asserted against those defendants be dismissed.

Also named in this action as a defendant is Deborah Goodrich, the Delaware County Supreme Court Clerk.  Dkt. No. 1 at 2.  "Absolute judicial immunity has not been limited to judges."  *Oliva v.* Heller, 670 F. Supp. 523, 526 (S.D.N.Y. 1987), *aff'd*, 839 F.2d 37 (2d Cir. 1988); *accord, Kitchen v. Doe*, No. 88-CV-7885, 1991 WL 4730 at *1 (S.D.N.Y. Jan. 16, 1991).  Court clerks also enjoy judicial immunity "where their acts are of a judicial nature."  *Oliva*, 670 F. Supp. at 526.  For their performance of ministerial functions, they are entitled to qualified immunity.  *Id.*  In this case, plaintiff's claims against defendant Goodrich arise from the performance of her duties as a court clerk, and specifically in compiling the record in plaintiff's state court action for purposes of perfecting an appeal. Dkt. No. 1 at ¶¶ 143-47, 282.  Because the Second Circuit has held that this type of conduct is properly considered "quasi-judicial," I find that

defendant Goodrich is immune from suit.  *See Peker v. Steglich*, 324 F.

App'x 38, 39-40 (2d Cir. 2009) (finding that a judicial law clerk's

"perform[ance of] a task that was basic and integral to the judicial function,

namely the processing of an appeal," constitutes judicial, rather than

ministerial, conduct).  Accordingly, I recommend that any claim asserted

against her be dismissed.

c.    Eleventh Amendment

The Eleventh Amendment protects a state against suits brought in

federal court by "private parties seeking to impose a liability which must be

paid from public funds in the state treasury."  *Edelman v. Jordan*, 415 U.S.

651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing

Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  This absolute

immunity, which states enjoy under the Eleventh Amendment, extends to

both state agencies and state officials sued for damages in their official

capacities when the essence of the plaintiff's claim seeks recovery from

the state as the real party in interest.[5]  *See, e.g., Daisernia v. State of New

York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit

---

[5]    In a broader sense, this principle implicates the sovereign immunity enjoyed by the State.  As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193 (2006).

which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing, *inter alia*, *Cory v. White*, 457 U.S. 85, 89-91, (1982)).

Based upon the Eleventh Amendment, it is clear that any of plaintiff's claims against the State of New York that seek monetary relief are subject to dismissal. Similarly, plaintiff's claims against the New York State Department of Health, a state agency, are also precluded by the Eleventh Amendment.[6] *See, e.g., Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) ("Although the Eleventh Amendment does not apply to suits against counties, municipal corporations, and other political subdivisions, the Thruway Authority is entitled to immunity if it can demonstrate that it is . . . like 'an arm of the State,' such as a state agency[.]'" (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

---

[6] It is unclear whether plaintiff intended OPMC as a defendant because the complaint neither names OPMC as a defendant nor specifies the relief sought against that agency. *See generally* Dkt. No. 1. To the extent that plaintiff has attempted to assert a claim against the OPMC related to his complaint filed with that agency against defendants Bassett Healthcare, Conrad, and Leonardo, however, that claim is also subject to dismissal based on the Eleventh Amendment, in light of OPMC's status as a New York State agency. *See Wang v. Office of Prof. Med. Conduct*, 228 F. App'x 17, 19 (2d Cir. 2007) (affirming the district court's determination that the plaintiff's claims against OPMC are barred by the Eleventh Amendment).

U.S. 274, 280 (1977)).

        d.     <u>Plaintiff's Claims Against Defendant Nash</u>

Should the foregoing recommendations be adopted, the only remaining defendant is Shawn Nash, Esq. According to plaintiff's complaint, defendant Nash represented defendants Bassett Healthcare, Conrad, and Leonard in plaintiff's state court action. Dkt. No. 1 at ¶ 82.

It is not clear to the court what claims are asserted against defendant Nash. To the extent plaintiff attempts to assert a claim under 42 U.S.C. § 1983, that claim fails because there are no allegations in the complaint that plausibly suggest defendant Nash is a state actor or that any of his conduct violated any of plaintiff's civil rights. *See Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (holding that, to state a cause of action under section 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law" (quotation marks omitted)). Moreover, to the extent that plaintiff attempts to assert a common law claim of breach of contract, that claim fails because there are no allegations in the complaint plausibly suggesting the existence of a contract between defendant Nash and plaintiff. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) ("To state a claim in federal court

18

for breach of contract under New York law, a complaint need only allege

(1) the existence of an agreement, (2) adequate performance the contract

by the plaintiff, (3) breach of contract by the defendant, and (4)

damages."); *accord, Jeda Capital-56, LLC v. Lowe's Home Centers, Inc.*,

No. 12-CV-0419, 2013 WL 5464647, at *3 (N.D.N.Y. Sept. 30, 2013)

(Kahn, J.).  To the extent that plaintiff has attempted to assert a

negligence cause of action against defendant Nash, that claim fails

because there are no allegations in the complaint that plausibly suggest

defendant Nash owed any duty to plaintiff in his capacity as the attorney

for defendants Bassett Healthcare, Conrad, and Leonard.   *See Lerner v.

Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) ("To establish a prima

facie case of negligence under New York law, a plaintiff must demonstrate

(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and

(3) injury proximately resulting therefrom." (quotation marks omitted)).

Finally, to the extent that plaintiff attempts to assert a fraud claim against

defendant Nash, that claim fails because the complaint contains no

allegations that defendant Nash made a false representation to him, or

that plaintiff relied upon such a representation.  *See Eternity Global Master

Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 186-87

(2d Cir. 2004) ("To state a claim for fraudulent misrepresentation under

New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." (quotation marks omitted)); *accord*, *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 274, 300 (N.D.N.Y. 2012) (D'Agostino, J.).  Although plaintiff alleges that defendant Nash misled the state court by, *inter alia*, misconstruing his the claims asserted in his complaint in the state court action, *see e.g.,* Dkt. No. 1 at ¶¶ 90, 94, there are no allegations that plaintiff relied on the alleged false statements, *see generally* Dkt. No. 1. Indeed, throughout his complaint in this case, plaintiff adamantly refutes the truth of defendant Nash's alleged misrepresentations contained in the cross-motion for summary judgment in state court.  *See, e.g., id.* at ¶¶ 82-90, 94.

Accordingly, because none of the allegations in plaintiff's complaint plausibly suggest the existence of a cognizable claim against defendant Nash, I recommend that any claim asserted against that defendant be dismissed.

C.    <u>Whether to Permit Amendment</u>

For the reasons articulated above, I am recommending that plaintiff's complaint in this action be dismissed in its entirety.  The next question is whether, in deference to his *pro se* status, plaintiff should be granted leave to replead.

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently,

"[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report with respect to the claims asserted are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

III.    SUMMARY AND RECOMMENDATION

Although I find that plaintiff qualifies to proceed in this matter IFP, I conclude that his claims against the fourteen defendants are barred on various grounds, and that his complaint should be dismissed. I further find that granting him leave to replead would be futile in light of the substantive deficiencies identified in each of the claims, as discussed above. Accordingly, it is hereby

ORDERED that plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be

DISMISSED in its entirety, without leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     December 5, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge